UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | Criminal Action No. 7: 16-01-DCR |
| V. | ) ) ) | |
| RYAN PATRICK COOPER, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Ryan Cooper's motion to suppress his November 4, 2015, statements to law enforcement and the fruits of those statements. [Record No. 28] Cooper asserts that his statements should be suppressed because they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). [Record No. 28-1, p. 3] Further, he argues that the confession was involuntary under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. [*Id.*]

The motion was referred to United States Magistrate Judge Edward B. Atkins for review and issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The parties submitted supplemental briefs [Record Nos. 35; 38; 39] and an evidentiary hearing was held on March 18, 2016. [Record No. 32] On April 29, 2016, Magistrate Judge Atkins issued his report, recommending that the defendant's motion be denied. [Record No.

- 1 -

40] Cooper filed objections to the magistrate judge's Report and Recommendation,[1] and the United States has responded. [Record Nos. 44, 53]  After reviewing all relevant materials, the Court agrees with Magistrate Judge Atkins and will deny the motion to suppress.

## I.

On November 4, 2015, Detective Wilmer Anthony Gatson, Sergeants Michael Bowling and Bill Collins, and five other officers executed a state search warrant at Rhonda Staton's residence due to their investigation of two pornographic images of an infant that allegedly originated from that residence. [Record No. 28-1, p. 1]  Detective Gatson testified that Cooper arrived at 1:41 p.m., riding an all-terrain vehicle. [*Id.*; Record No. 40, p. 2]  He saw Cooper drink at least one beer that day. [*Id.*]  However, Sergeant Bowling witnessed the defendant drinking up to three beers that day.[2]  [Record No. 35, pp. 2, 4]  On the other hand, Cooper testified that he drank seven beers that day, and his wife (Rebecca Cooper) testified that she saw him drink four beers but that she found six cans in the van and in the creek the next day. [Record No. 40, p. 5]  Further, Cooper claims that he was drinking a beer when he arrived, and that the officers encouraged him to drink when he asked if he could continue. [Record No. 28-1, p. 1]

Cooper made some statements to the officers prior to the recorded interviews discussed below. Specifically, he alleges that, sometime before 6:14 p.m., he admitted that

---

[1]  Because Cooper filed objections to Magistrate Judge Atkins' Report and Recommendation, the Court conducts a *de novo* review of the matters that are the subject to the defendant's objections. *See* 28 U.S.C. § 636(b)(1)(C).

[2]  In its response, the United States asserts that Sergeant Bowling only witnessed Cooper drinking two beers. [Record No. 53, p. 3]  However, there is evidence that suggests he saw the defendant drink at least part of three beers. [Record No. 35, pp. 2, 4]

his hand and his daughter were depicted in the pornographic photographs. [Record Nos. 35, p. 7; 44, p. 1] Also, at 4:00 p.m., Sergeant Collins took photos of Cooper's hands. [Record No. 35, p. 2] And sometime before the recorded interviews, Detective Gatson assured Cooper that he was not in custody. [Record No. 40, p. 2]

According to the recording of Cooper's first interview, at 6:15 p.m., Cooper signed a *Miranda* waiver after being informed of his rights to remain silent and to have access to counsel. [*Id.*] After the officers informed the defendant that they were investigating how photographs of Cooper's nude, five-month-old daughter ended-up in the possession of Philip Bruinsma in Montana, Cooper denied knowing Bruinsma. [*Id.*, p. 3] He also stated that at the time the photograph was taken, he was under the influence of several drugs, but that he did not remember taking such a photograph and that he could not "fathom" doing something like that. [*Id.*] The first interview ended at 6:43 p.m. [*Id.*] Rebecca Cooper testified that, sometime between the first and second interviews, she saw her husband sleeping inside the officers' van, where the recorded interviews took place. [Record No. 35, p. 3]

The second interview began at 7:22 p.m. Detective Gatson re-read Cooper his *Miranda* rights and introduced Sergeant Mullen to him. [Record No. 40, p. 3] The defendant then demonstrated his understanding of the difference between the truth and a lie. [*Id.*] Next, Cooper made statements about being manipulated into taking the photographs. [*Id.*, pp. 3−4] He explained that it probably occurred when he and his relatives became intoxicated. [*Id.*, p. 4] However, Cooper still expressed no recollection of taking the photographs and denied meeting or speaking with Bruinsma. [*Id.*]

At that point, the officers informed Cooper that he could "be the man" and "right a wrong" by helping catch Bruinsma. [*Id.*] The defendant then admitted that he took the photographs, explaining how he received a message from Bruinsma on a pornography website. While Cooper remembered looking at images of incest and corresponding with Bruinsma, he did not remember Bruinsma asking for photographs and did not remember taking any photographs. [*Id.*]

The third recorded interview began at 8:13 p.m. Detective Gatson again reviewed Cooper's rights, and Cooper acknowledged that he understood them. [*Id.*, pp. 4−5] During this interview, Cooper then admitted to taking the two photographs in question and e-mailing them to Bruinsma, explaining that he borrowed a guest's Pantech phone to take the images, texted the images to his own iPhone, deleted the images from his guest's phone, then e-mailed the photographs from his iPhone to Bruinsma. [*Id.*, p. 5] The last interview ended within six minutes. [*Id.*]

## II.

With a motion to suppress, the movant bears the initial burdens of production and persuasion. *United States v. Smith*, 783 F.2d 648, 650 (6th Cir. 1986). Once the movant has displayed a violation of some constitutional or statutory right justifying suppression, the United States has the burden to demonstrate that no constitutional violation occurred. *See United States v. Bradley*, 163 F. App'x 353, 357 (6th Cir. 2005). Thus, "[w]here a party seeks suppression of his statements based upon a failure to receive his *Miranda* warnings, he must demonstrate by a preponderance of evidence [] that he was entitled to receive them." *United States v. Lawrence*, 892 F.2d 80 (table), 1989 WL 153161, *5 (6th Cir. 1989)

(internal citation omitted). However, "[w]hen a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary." *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003). In addition, the United States bears the burden of proving that a *Miranda* waiver is knowing and voluntary. *United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009).

### A. Pre-interview Statements

The magistrate judge determined that the motion to suppress should be denied as to the pre-interview statements because Cooper failed to identify any particular statements to be suppressed. [Record No. 40, p. 9] However, in his objections, Cooper asserts that he made two statements prior to the recorded interviews: (1) he admitted that his hand was depicted in one of the pornographic photographs and (2) he conceded that it was his daughter in the photographs. [Record No. 44, p. 1] He contends that those statements should be suppressed because he was not advised of and did not waive his Fifth and Sixth Amendment rights before making the statements. [*Id.*]

As an initial matter, it is not clear that Cooper actually made the subject statements. When Detective Gatson asked, "we agree this is your hand?" during the interviews, he may have been using a basic interrogation technique, rather than referring to Cooper's answer to a question posed before the interview. [*See* Record No. 40, pp. 13−14.] Further, the evidence establishes that Rebecca admitted that their daughter appeared in the photograph—not Cooper. [*See* Record No. 53, pp. 1−2.] In any event, to the extent the United States intends to use such statements in its case-in-chief, they do not need to be suppressed under *Miranda*

*v. Arizona* because the defendant was not subjected to custodial interrogation during the pre-interview phase. 384 U.S. 436 (1966).

Before a law enforcement officer may question a person in custody, the suspect "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444. A custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* Incriminating statements "elicited in noncompliance with this rule may not be admitted . . . in a criminal trial." *Stansbury v. California*, 511 U.S. 318, 322 (1994). After a suspect has been advised of his rights, he may waive them, "provided the waiver is made voluntarily, knowingly and intelligently" under the totality of circumstances. *Miranda*, 384 U.S. at 444.

Custody requires either a formal arrest or "restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury*, 511 U.S. at 322 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)) (internal quotation marks omitted). In other words, the question is whether a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The Sixth Circuit focuses on the following factors in determining whether a reasonable person in the defendant's position would conclude that he was in custody: (i) the location of the interview; (ii) the length and manner of questioning; (iii) whether the individual possessed unrestrained freedom of movement; and (iv) whether the individual was informed that he

need not answer questions. *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (citing *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003)).

Here, the defendant has failed to carry his burden of demonstrating that he was subjected to custodial interrogation during the pre-interview phase, which would have triggered the requirement that the officers provide him *Miranda* warnings. *See Lawrence*, 1989 WL 153161, at *5. Under the *Panak* factors, Cooper was not in custody during the pre-interview stage. 552 F.3d at 465. Regarding location, he was questioned both inside and outside the residence, as well as inside the officers' van. [Record Nos. 35, p. 2; 40, p. 5] "[W]hen police question a suspect in a residence, these circumstances often do not rise to the kind of custodial situation that necessitates *Miranda* warnings." *United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998). Thus, to the extent Cooper made statements inside his home or yard,[3] this factor weighs in favor of a finding that he was not in custody.

With respect to Cooper's statements in the law enforcement van, while such a locations weighs in favor of a finding of custody, "a non-custodial interview is not transformed into a custodial one simply because 'the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'" *United States v. Malcolm*, 435 F. App'x 417, 421 (6th Cir. 2011) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). In *Malcolm,* the Sixth Circuit determined that the defendant was not in custody, even though he was interrogated at a federal law enforcement office, because he voluntarily appeared for the interview, he was not physically restrained, and agents repeatedly told him that he was not under arrest. 435 F. App'x at 421; *see also Singleton v.*

---

[3] The home was owned by Rhonda Staton, Cooper's mother-in-law. However, Cooper and his wife lived at the residence. [Record No. 38, p. 3]

*Carter*, 74 F. App'x 536, 541 (6th Cir. 2003). Here, Cooper voluntarily entered the van, was not physically restrained, and only remained in the van for a short time. [Record No. 35, pp. 1−2] As a result, the effect this location would have on a reasonable person's conclusion that he was in custody is weakened. *See Malcolm*, 435 F. App'x at 421.

The length of questioning factor is inconclusive. Although the officers were at the residence for roughly five hours during the pre-interview stage, they were not interviewing Cooper the entire time. For example, Cooper's wife, Rebecca, was interviewed at 3:24 p.m. by Detective Watson. [Record No. 28-1, p. 1] Further, Cooper went to the rear of his van a couple times to grab beers. [Record No. 35, p. 2] Moreover, the officers interviewed several individuals that day. [Record No. 38, pp. 3−4]

The defendant does not make any allegations regarding the manner of questioning during the pre-interview stage. *See Panak*, 552 F.3d at 465. And regarding Cooper's freedom of movement and the ability to stop questioning, those factors weigh in favor of a finding of non-custody. *See id.* At no time was Cooper physically restrained. In fact, the officers permitted him to grab more than one beer during the afternoon. [Record No. 35, p. 2] Moreover, Detective Gatson informed Cooper that he was not in custody. *See id.* [Record No. 40, p. 2] A reasonable person in the defendant's circumstances would have felt that he was free to stop the questioning and/or leave. *See Thompson*, 516 U.S. at 112.

Cooper argues in his objections that he was interrogated, but he does not demonstrate that he was in custody for purposes of *Miranda*. [Record No. 44, p. 2] In the objections and in the earlier memorandum he asserts that, because police considered him a suspect, he was in custody. [Record Nos. 35, p. 2; 44, p. 2] However, the officers' subjective intentions are

irrelevant to the analysis. *See Stansbury*, 511 U.S. at 323. Cooper also contends that "[i]t is clear based on [his] testimony that he did not feel he could leave." [Record No. 35, p. 2] But Cooper's subjective feelings are also irrelevant. *See id.* Rather, the inquiry is whether a reasonable person in the defendant's circumstances would feel that he was free to cease questioning and leave. *See Thompson*, 516 U.S. at 112.

In summary, the relevant *Panak* factors weigh in the United States' favor. Because some of the questioning locations were neutral, the manner of questioning was non-coercive, the defendant's freedom of movement was not restrained, and the officers advised Cooper that he was not in custody, he was not subjected to custodial interrogation. As a result, the officers were not required to advise Cooper of his rights and obtain a *Miranda* waiver when questioning him during the pre-interview phase. 384 U.S. at 444.

B. **Recorded Interviews**

Cooper also alleges that his statements during the recorded interviews should be suppressed because his *Miranda* waiver was not knowing and voluntary and because his confession was involuntary. [Record No. 35, pp. 4−5] Conversely, the United States contends that the waiver was both knowing and voluntary and that the confession was not coerced. [Record No. 38, p. 6]

1. *Miranda* **Waiver**

After being advised of his rights, a suspect may waive them so long as the waiver is made voluntarily, knowingly, and intelligently. *Miranda*, 384 U.S. at 444. The government has the burden of proving a valid waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). "Only if the 'totality of the circumstances surrounding

the interrogation' reveal[s] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

### a. Voluntariness

"[C]oercive police activity is a necessary predicate to the finding that a confession is not voluntary . . . . " *Connelly*, 479 U.S. at 167 (internal quotation marks omitted). It is also a necessary predicate to finding that a *Miranda* waiver is involuntary. *See id.* at 169−70. A lesser quantum of coercion is required where the suspect is intoxicated and the officers are aware of his intoxication. *See, e.g., Murphy v. Ohio*, 551 F.3d 485, 514 (6th Cir. 2009); *United States v. Hampton*, 572 F. App'x 430, 434 (6th Cir. 2014). However, "diminished mental capacity alone does not prevent a defendant from validly waiving his or her *Miranda* rights." *Garner v. Mitchell*, 557 F.3d 257, 264 (6th Cir. 2009); *see also United States v. Chrismon*, 965 F.2d 1465, 1469 (7th Cir. 1992).

In determining whether a defendant voluntarily waived his *Miranda* rights, the Court considers factors such as: (i) police coercion; (ii) the length of the interrogation; (iii) the location of the interrogation; (iv) the continuity of the interrogation; (v) the suspect's maturity; (vi) the suspect's education; (vii) the suspect's physical condition and mental health; and (viii) whether the suspect was advised of his *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693–94 (1993); *see also Colorado v. Spring*, 479 U.S. 564, 574 (1987); *United States v. Wiley*, 132 F. App'x 635, 638 (6th Cir. 2005) (discussing *Withrow* in the context of the waiver inquiry).

The magistrate judge properly determined that Cooper executed a valid waiver of his rights under *Miranda*, 384 U.S. at 444. [Record No. 40, p. 10] In his objections, Cooper largely takes issue with the magistrate judge's determination that he was not intoxicated at the time of the waiver. [Record No. 44, p. 3] Although there is sufficient evidence to indicate that Cooper may have been intoxicated, the evidence does not indicate that the officers were aware of Cooper's intoxication. For instance, the officers testified to seeing Cooper drink, at most, three beers and even Cooper's wife only witnessed him drinking four beers over a six-hour timespan. [Record Nos. 35, pp. 2, 4; 38, p. 2] Additionally, the officers testified that Cooper did not appear to be intoxicated. [Record No. 38, p. 2] The interview recordings support the officers' testimony.[4] [Record No. 40, p. 11] Although Rebecca Cooper saw her husband sleeping at some point in between the first and second interviews, there is no evidence that the officers were aware of this. [Record No. 35, p. 3] Because Cooper's alleged intoxication was not "known to interrogating officers," a "lesser quantum of coercion" is not triggered by Cooper's intoxication. *See Murphy*, 551 F.3d at 514. The present case is akin to *United States v. Hamilton*, where the suspect's *Miranda* waiver and statements were voluntary even though he drank several beers and five shots of liquor before going to the police station for interrogation. 445 F. App'x 841, 843 (6th Cir. 2011). There, the court noted that the suspect was "alert, cooperative, and able to form questions" while at the police station. *Id.* at 844. Thus, the Court proceeds under the usual analysis concerning the voluntariness of the waiver.

---

[4] As noted in the United States' response, Cooper's lucidity during the recorded interviews suggests that he was not actually intoxicated. [Record No. 53, p. 3] However, the defendant's intelligibility affects the analysis of the officers' perception more strongly than the analysis of Cooper's level of intoxication.

Regarding the first factor (i.e., police coercion), the defendant submits that the police "made threats to remove [Cooper's] children thereby coercing the involuntary waiver of his *Miranda* rights." [Record No. 44, p. 3] To the extent the defendant alleges that the officers' conduct influenced his initial waiver, the Court notes that the allegedly-coercive statements were made *after* Cooper's waiver. *See, e.g., Hamilton*, 445 F. App'x at 843 (noting that officer's comments occurred after waiver of *Miranda* rights). [Record No. 35, pp. 3−4] Therefore, they are only relevant for analyzing the voluntariness of Cooper's confession, not the voluntariness of the *Miranda* waiver.

The second factor weighs slightly in Cooper's favor because Cooper was questioned on and off from 1:41 p.m. until 6:14 p.m. before being advised of his *Miranda* rights and executing a waiver. [*Id.*, pp. 1−3] However, this factor is weakened by the fourth factor— the questioning was not continuous. *See Withrow*, 507 U.S. at 693.

The third factor is either neutral or weighs slightly in Cooper's favor. *See Withrow*, 507 U.S. at 693. Cooper was not taken to the police station. However, at one point, he was questioned inside a law enforcement van near his residence. [Record No. 35, pp. 3−4] With respect to Cooper's maturity and education, the magistrate judge noted that the defendant is an adult, he responded appropriately to the questions posed by law enforcement, and he seemed to understand the rights he was waiving. *See id.* [Record No. 40, p. 14] Finally, the last factor indicates that Cooper's waiver was valid because he was advised of his *Miranda* rights. *See id.* In summary, the *Withrow* factors indicate that Cooper's *Miranda* waiver was valid, especially where the allegedly coercive police tactics occurred after the waiver. *See*

*Spring*, 479 U.S. at 574 (reasoning that absent evidence of coercive police conduct, waiver was voluntary under *Miranda*).

The crux of Cooper's argument regarding the involuntariness of the waiver is the fact that he had already made incriminating statements. For example, Cooper cites *Missouri v. Seibert*, where the Supreme Court held that *Miranda* warnings given mid-interrogation were ineffective. 542 U.S. 600 (2004). [Record No. 44, p. 2] However, *Seibert* only applies where there is an initial "inadmissible segment" of custodial interrogation that taints the later interrogation. *See id.* at 612; *see also Sturm v. Superintendent River Juvenile Corr. Facility*, 514 F. App'x 618, 625 n.2 (6th Cir. 2013). Here, Cooper's initial statements were not obtained through custodial interrogation. As a result, *Miranda* warnings were not required and Cooper's admissions did not taint the subsequent waiver of his *Miranda* rights or the recorded confession.

      **b. Knowingly and Intelligently**

To the extent the defendant contends that his state of intoxication made his waiver unknowing and unintelligent, the magistrate judge properly concluded that the evidence indicates Cooper's waiver was knowing and intelligent. [Record No. 40, p. 14] For example, in *United States v. Dunn*, the Sixth Circuit determined that the district court did not err in adopting the magistrate judge's finding that an audiotape recording supported the officers' testimony regarding the defendant's lucidity and comprehension. 269 F. App'x 567, 573 (6th Cir. 2008). Consequently, the district court properly determined that the defendant's waiver was knowing and intelligent. *Id.* Similarly, the magistrate judge in this case found that Cooper was lucid and demonstrated an understanding of the rights he was

waiving.  [*Id.*]  Because the United States has demonstrated that Cooper's waiver was voluntary, knowing, and intelligent, the statements should not be suppressed under *Miranda*, 384 U.S. at 444.

### 2. Due Process Claim

The defendant also claims that his statements were involuntary under the Due Process Clause.  [Record No. 35, p. 1]  The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  As a result, statements admissible under *Miranda* may be excluded as violating a defendant's due process rights.  *See Dickerson v. United States*, 530 U.S. 428, 444 (2000).  Where a defendant claims that his confession was involuntary under the Due Process Clause, the government bears the burden of proving that the confession was voluntary.  *United States v. Wrice*, 954 F.2d 406, 410 (6th Cir. 1992).

The Sixth Circuit utilizes a three-factor test to determine if a confession is voluntary, analyzing whether: (i) "the police activity was objectively coercive;" (ii) the coercion was sufficient to "overbear the defendant's will;" and (iii) "the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (citing *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988)).  Factors that influence the analysis include the defendant's age, education, and intelligence, whether he was informed of his rights, the length and extent of questioning, and any use of physical punishment.  *Id.* at 422−23.

As discussed above, Cooper argues that the officers' conduct was objectively coercive because it involved manipulation and threats.  For instance, Sergeant Bowling asked, "[d]o

you love [your daughter]? She is too young to have a voice . . . . Do you really love her? What's it gonna be?" [Record No. 35, p. 9] Detective Gatson also stated that "[p]art of [his] job is to make recommendations about what happens with [Cooper's] kids." [*Id.*] Sergeant Bowling's questions appear to be basic interrogation techniques that do not rise to the level of coercion. *See Mahan*, 190 F.3d at 423 (finding no coercion where suspect was never threatened with arrest, the interview took place in an unlocked room, the suspect was never told he could not leave, and agents did not make any promises or threaten physical violence). Further, Detective Gatson's statement is not a threat—he was merely advising the defendant of his responsibilities in the case. *Compare with Lynumn v. Illinois*, 372 U.S. 528, 533 (1963) (finding coercion where officer said defendant "would probably lose custody of her children" but that cooperation would cause the officers to "go light on her"). Because the United States proved that the officers' actions were not objectively coercive, the magistrate judge properly concluded that the confession was voluntary.[5] *See Mahan*, 190 F.3d at 422. [Record No. 40, p. 14]

### III.

Cooper was not in custody during the pre-interview phase, meaning any statements he made during that timeframe need not be suppressed under *Miranda*. Regarding statements he made during the three recorded interviews, Cooper executed a voluntary, knowing, and intelligent waiver of his *Miranda* rights, and his confession was voluntary under the Due Process Clause of the Fourteenth Amendment. Therefore, the defendant's statements to

---

[5] As discussed above, Cooper's alleged intoxication did not result in a lesser quantum of coercion because the officers were not aware of the intoxication. *See Murphy*, 551 F.3d at 513.

officers on November 4, 2015, as well as the fruits of those statements, will not be suppressed. Accordingly, it is hereby

**ORDERED** as follows:

1. The Report and Recommendation of United States Magistrate Judge Edward B. Atkins [Record No. 40] is **ADOPTED** and **INCORPORATED** by reference.

2. Defendant Ryan Cooper's objections to Magistrate Judge Atkins' Report and Recommendation [Record No. 44] are **OVERRULED**.

3. The defendant's motion to suppress [Record No. 28] is **DENIED**.

This 20th day of May, 2016.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge